UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**ROBERT WILLIAM MOSHER, and
JULIE ANN MOSHER,**

Debtors.

Case No. **07-60007-13**

*MEMORANDUM  OF  DECISION*

At Butte in said District this 17th day of May, 2000.

Pending in this Chapter 13 case is the motion to modify stay filed by Alias Smith & Jones Pawn, Inc. ("Alias Smith & Jones") (Docket No. 18), and Debtors' objections thereto. The Chapter 13 Trustee filed a consent. Hearing on this contested matter was held at Great Falls on April 26, 2007. Alias Smith & Jones was represented by attorney Lisa Lynn of Great Falls, Montana, and its president Charles Conley ("Conley") testified. Debtors were represented by attorney D. Randy Winner of Great Falls, and Debtor Robert William Mosher ("Robert") testified. Exhibits ("Ex.") 1, 2, A[1] and B were admitted into evidence without objection. At the conclusion of the parties' cases-in-chief the Court closed the record and took the matter under advisement, and continued the hearing on confirmation of Debtors' Chapter 13 Plan. After review of the record and applicable law, this matter is ready for decision. For the reasons set

---

[1]Ex. A consists of documents which are included in Ex. 1.

1

forth below Debtors' objections are overruled and Alisa Smith & Jones' motion to modify stay will be granted by separate Order, which shall also reset the hearing on confirmation.

This Court has original and exclusive jurisdiction of this bankruptcy case pursuant to 28 U.S.C. § 1334(a). Alias Smith & Jones' motion to modify stay is a core proceeding under 28 U.S.C. § 157(b)(2)(G). This memorandum includes the Court's findings of fact and conclusions of law.

## FACTS

Alias Smith & Jones is a licensed pawnshop engaged in loaning money on pawn, buying and selling merchandise. Conley is president of Alias Smith & Jones and custodian of its records. He testified that Robert Mosher is a client of Alias Smith & Jones, and that Ex. 1 is a list of Robert's pawn agreements with Alias Smith & Jones.

Robert has been employed in the United States Air Force for 17 years. He testified that he plans to retire in about two and a half years, after which he intends to start a business buying and selling firearms. He testified that he owns 70 firearms, including 10 or 15 currently pawned at Alias Smith & Jones. Robert testified that between May and August of 2006 he borrowed about $4,000 from Alias Smith & Jones to repay a debt which he owed from California. On cross examination Robert testified that he voluntarily pawned his firearms and received the loan proceeds from Alias Smith & Jones.

Ex. 1 sets forth the following pawn transactions by Robert:

#7858[2] dated 5/1/2006 pawned a Glock 17, #AZE3564 9mm semi-automatic; a Smith & Wesson 940-1, #ccd4545 9mm revolver w/ blue case; a Charles Daly 1911, #CD019308 .45 caliber semi-automatic; and a Colt Anaconda #MM22542 .44 caliber revolver, for a total amount financed of $1,000.00, finance charge of $200.00 and annual percentage rate stated of $240.00%;

---

[2]Ex. A, page 1, also is the pawn agreement for transaction #7858.

2

#7960 dated 5/5/2006 pawned a Ruger Mk11, #216-75800 .22 caliber semi-automatic pistol and an American Arms, Inc., Spectre HC pistol, #c6729 .45 caliber semi-automatic, for total amount financed of $700, finance charge of $140.00 and interest rate of 240%;

#8151 dated 5/10/2006 pawned 1 Ruger 1022, #257-53355 .22 caliber bolt action rifle with case for $100, finance charge of $20 at 240% interest;

#8515 dated 5/19/2006 pawned a Taurus Raging Hornet, #3685 .22 caliber revolver for $350.00, finance charge of $70.00 at 240% interest;

#8809 dated 5/26/2006 pawned a Taurus Raging Bee, #VJ983469 .22 caliber revolver for $300.00, finance charge of $60 at 240% interest;

#9021 dated 6/1/2006 pawned a Ruger Mini 14, #186-05952 .223 caliber semi-automatic rifle for $360.00, finance charge of $72 at 240% interest;

#9188 dated 6/6/2005 pawned a new m100, #1001290 .22 caliber semi-automatic Calico .22 shotgun for $300.00, finance charge of $60.00 at 240% interest;

#9254 dated 6/8/2006 pawned a Winchester M1A Carbin, #6792825 .30 caliber semi-automatic rifle with 3 clips for $300.00, finance charge of $60.00 at 240% interest;

#10483 dated 7/12/2006 pawned 1 X-Box Games, #396967252106 W/ Halo 2 & 4 controllers for $55.00, finance charge of $11.00 and 240% interest;

#11041 dated 8/25/06 pawned a Franchi Law 12, #s88260 12 gauge semi-automatic shotgun for $300.00, finance charge of $60.00 and 240% interest;

#11916 dated 8/19/06 pawned a Ruger Carbine, #102-28062 .44 caliber semi-automatic rifle for $150.00, finance charge of $30.00 and 240% interest.

Ex. B are the individual pawn tickets for the transactions shown on Ex. 1.

Conley testified that the pawn amount on Ex. 1 reflects both the amount loaned on the pledged items and Alias Smith & Jones' estimate of the items' fair market value. He testified that Alias Smith & Jones arrived at the value of the firearms from a "Blue Book" of firearm values and from the internet at sites such as "gunbrokers.com" and "e-Bay", and that it valued

3

Robert's X-Box Games by taking the new sale price and adjusting it for its condition.

On cross examination, Conley testified that the $200 "Finance Charge" on the first page of Ex. 1 represents the monthly payment required to prevent the sale of the pawned items based on that agreement. At the bottom of Ex. 1[3] are the terms and conditions from the back side of each pawn agreement, where it provides in pertinent part: "Pledgor hereby deposits with the issuer of this pawn ticket the described Pledged Property, listed on the reverse side." The terms of conditions further provide:

> The Pledged Property listed on the reverse side will be held by said pawnbroker for a period of one (1) day plus thirty (30) days grace as prescribed by law, after which time Pledgor releases all equity in said Pledged Property to said pawnbroker to sell without notice or demand for payment. Customer agrees that issuers hereof may, at issuer's option, extend this agreement one or more times. If the Pledgor does not redeem the Pledged Property on or before the maturity date, loan charges shall continue to accrue as set forth on the reverse side.
>
> * * * *
>
> The issuer of this agreement shall be limited to the aforesaid pledged property in its rights to recover, except for fraud.

Ex. 1. Under questioning by the Court Robert testified that he signed all the pawn agreements on Ex. 1, that he read their terms and conditions, and that he knew they provided for finance charges.

Ex. 2 is a compilation prepared by Alias Smith & Jones of Robert's pawn transactions from Ex. 1 listing the pawned items and date, pawn amount, charges due and pickup price as of April 4, 2007, with a total pickup price in the sum of $6,555.00. The column on Ex. 2 marked "pawn amount" lists a total for all Alias Smith & Jones' collateral in the sum of $3,915.00, which Conley testified represents both the amount loaned and also the fair market value of the

---

[3] The terms and conditions are also set forth on the second page of Ex. A.

4

pawned items. Ex. 2's column marked "Charges Due" represents the interest due on the items, and totals $2,640.00 as of April 4, 2007. Robert testified that he was not aware of the high amount of interest he would have to pay Alias Smith & Jones, and that he only paid attention to the monthly payment.

Conley testified that Alias Smith & Jones is undersecured based on its estimate of the fair market value of the pawned items. Conley testified that Robert is not obligated under the pawn agreements to redeem the pawned items, and that Robert had not redeemed the pawned items as of the date of the hearing and they remain in the possession of Alias Smith & Jones. Conley testified that if a borrower does not redeem a pawned item, Alias Smith & Jones typically "pulls" the pawned item for display in their store for sale. Ex. 2 includes a middle column with the heading "Date Out", which Conley testified was the current redemption date after which each item may be pulled. Robert testified that in one instance where he was not current on his payments, Alias Smith & Jones pulled one firearm, sold it and kept the proceeds[4]. Conley testified that storing firearms beyond their ordinary term before pulling them for display and sale is a hardship because firearms take up limited secure space in Alias Smith & Jones gun storage room, and because its gun logs are subject to regular inspection by the Bureau of Alcohol, Tobacco and Firearms ("ATF").

Conley testified that Robert made regular monthly payments in the months before his bankruptcy and his loans were in good standing until he filed bankruptcy and stopped making payments. Debtors filed their Chapter 13 petition, Schedules, and Statement of Financial Affairs on January 5, 2007. Schedule B lists personal property, including at item no. 8 approximately 60 firearms (unencumbered) with a fair market value of $11,833.00, and 14 firearms in the

---

[4]No indication exists in the record that the pulled item is part of the instant contested matter.

possession of Alias Smith & Jones with a listed fair market value of $4,740.00.  Schedule D lists Alias Smith & Jones among secured creditors, listing its claim in the amount of $3,900.00 secured by 14 firearms valued at $4,700.00, which Robert testified was their value.  Conley testified that firearms can depreciate in value depending on their condition, but he considered Robert's valuation of Alias Smith & Jones' collateral within his understanding of their range of values.

Debtors' Statement of Financial Affairs, Item 3 "Payments to Creditors", lists an amount paid to Alias Smith & Jones within 90 days of the petition date of $2,100.00.  Debtors filed their Chapter 13 Plan on January 8, 2007, proposing plan payments for sixty months and treating Alias Smith & Jones as a creditor with an impaired secured claim allowed in the amount of $3,900.00, to be paid interest at the rate of ten percent (10%).  At page 3, part 3 of the Plan Debtors list "None" under rejection of executory contracts and unexpired leases, and state "All other executory contracts and unexpired leases shall be affirmed."

Alias Smith & Jones filed its motion to modify stay on April 4, 2007, seeking relief from the stay under 11 U.S.C. §§ 362(d)(1) and (d)(2) in order to liquidate its collateral listed as 14 firearms and one X-Box Games with controllers.  Alias Smith & Jones' motion contends that the collateral is not property of the estate under 11 U.S.C. § 541(b)(8), that the collateral has a total fair market value in the sum of $3,915.00, and that the Debtors are in default of 3 installments in the total amount of $2,640.00.  At page 4 of Alias Smith & Jones' motion, lines 11 through 13, it states that pursuant to the pawn agreements "Debtors have no obligation to repay the money or redeem the collateral."  The Chapter 13 Trustee Robert G. Drummond filed a consent to Alias Smith & Jones' motion on April 6, 2007.

Debtors filed an objection setting Alias Smith & Jones' motion for hearing, contending

that the pawned firearms are property of the estate and contending that Alias Smith & Jones is protected by an equity cushion. Debtors filed a supplemental objection arguing that § 541(b)(8) does not apply because they made timely prepetition payments to Alias Smith & Jones, and further contending that Debtors' Plan proposes to modify Alias Smith & Jones' rights pursuant to 11 U.S.C. § 1322(b)(2) and (b)(3).

## DISCUSSION

This Court discussed the automatic stay in *In re Westco Energy, Inc.*, 18 Mont. B.R. 199, 211 (Bankr. D. Mont. 2000):

> Under 11 U.S.C. § 362(a), "[a] bankruptcy filing imposes an automatic stay of all litigation against the debtor." *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990) (citing 11 U.S.C. § 362(a)), except in those cases specifically enumerated in § 362(b). The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives debtors a breathing spell from creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits debtors to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove them into bankruptcy. S.Rep. No. 989, 95th Cong., 2d Sess. 54-55 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5840-41.

Alias Smith & Jones recognizes that the automatic stay applies with respect to its collateral, and moves for relief from the stay under §§ 362(d)(1) and (d)(2) to enforce its rights under the pawn agreements.

Except for the issue of the Debtors' equity in the property, in a proceeding on a motion to modify the automatic stay the Debtors have the burden of proof to show that the stay should not be modified. *In re Farmer*, 19 Mont. B.R. 19, 23, 257 B.R. 556, 559 (Bankr. D. Mont. 2000); *In re Interstate Distributing Co., Inc.*, 13 Mont. B.R. 86, 90 (D. Mont. 1993); *In re National Environmental Waste Corp.*, 191 B.R. 832, 836 (Bankr. C.D. Cal. 1996), *aff'd*, 129 F.3d 1052 (9th Cir. 1997); *In re Syed*, 238 B.R. 126, 132 (Bankr. N.D. Ill. 1999); *In re Sauk Steel Co., Inc.*,

133 B.R. 431, 436 (Bankr.N.D.Ill.1991); 11 U.S.C. § 362(g)(2).

The evidence admitted at the hearing shows that the Debtors stopped making payments to Alias Smith & Jones under the pawn agreements, Ex. 1/Ex. A, as Robert testified that he has not made any payments after the petition date. This Court explained the standard for modifying the stay for "cause" under § 362(d)(1) in *Westco*:

> Section 362(d), however, provides that, "[on request of a party in interest and after notice and a hearing, the court shall grant relief from the [automatic] stay" in three instances. The subsection relevant to these proceedings is § 362(d)(1), which allows for the granting of relief from the automatic stay "for cause".[5] What constitutes cause for purposes of § 362(d) "has no clear definition and is determined on a case-by-case basis." *Tucson Estates*, 912 F.2d at 1166. *See also Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In the Matter of Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986) (Relief from the automatic stay may "be granted 'for cause,' a term not defined in the statute so as to afford flexibility to the bankruptcy courts.").

*Westco*, 18 Mont. B.R. at 211-12.

Based on Robert's admitted failure to continue making regular payments to Alias Smith & Jones, and the Chapter 13 Trustee's consent to Alias Smith & Jones' motion, the Court in its discretion finds that Alias Smith & Jones has shown "cause" under § 362(d)(1) to lift the stay, and Debtors' burden to show why the stay should not be lifted is increased.

Debtors' argue that the stay tolled the running of the redemption period and that they may cure the default under § 1322(b)(2) and (3) which permits a plan to "modify the rights of holders

---

[5] Section 362(d)(1) provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section , such as by terminating, annulling, modifying, or conditioning such stay–

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]

of secured claims" and to "provide for the curing or waiving of any default." However, the term "secured claim" must be construed pursuant to 11 U.S.C. § 506(a), which states:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

*Farmer*, 19 Mont. at 24, 257 B.R. at 560.

Thus the extent to which Alias Smith & Jones has a "secured claim" as determined by § 506(a) depends on whether the property is property in which the estate has an interest, and the Trustee's consent undermines Debtors' argument that the pawned items are estate property.

The automatic stay applies only to property of the bankruptcy estate, which is defined broadly under 11 U.S.C. § 541(a)(1) as "all legal or equitable interests of the debtor in property as of the commencement of the case." *In re Pettit*, 217 F.3d 1072, 1077 (9th Cir.2000). While § 541(a)(1) includes in the estate all legal or equitable interests of the debtor in property as of the commencement of the case, state law determines the extent of such interests. *Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914 (1979); *Farrey v. Sanderfoot*, 500 U.S. 291, 299, 111 S.Ct. 1825 (1991), *Board of Trade of City of Chicago v. Johnson* 264 U.S. 1, 10, 44 S.Ct. 232 (1924), *Long v. Bullard*, 117 U.S. 617, 6 S.Ct. 917 (1886). *In re Deines*, 17 Mont. B.R. 114, 117-120 (Bankr. D. Mont. 1998) *(quoting In re Campbell (Balyeat Law Offices v. Campbell)*, 14 Mont. B.R. 132, 140-41 (9th Cir. BAP 1995)); *In re Contractors Equip. Supply Co.*, 861 F.2d 241, 244 (9th Cir. 1988); *In re Farmers Markets, Inc.*, 792 F.2d 1400, 1402 (9th Cir. 1986). "The bankruptcy estate succeeds to no more interest than the Debtor possessed or had, and the estate takes its interest

9

subject to such conditions." *Deines*, 17 Mont. B.R. at 117 (*quoting In re Baquet*, 61 B.R. 495, 497-98 (Bankr. Mont. 1986)); *see also In re Weatherwax*, 16 Mont. B.R. 304, 308-09 (Bankr. D. Mont. 1997).

Furthermore, § 541(b) lists interests which are specifically excluded from property of the estate, including the subsection raised by Alias Smith & Jones, § 541(b)(8), which provides that property of the estate does not include:

> (8) . . . any interest of the debtor in property where the debtor pledged or sold tangible property . . . as collateral for a loan or advance of money given by a person licensed under law to make such loans or advances, where –
>
> (A) the tangible personal property is in the possession of the pledgee or transferee;
>
> (B) the debtor has no obligation to repay the money, redeem the collateral, or buy back the property at a stipulated price; and
>
> (C) neither the debtor not the trustee have exercised any right to redeem provided under the contract or State law, in a timely manner as provided under State law and section 108(b)

Debtors' supplemental objection concedes subsection (A), but they argue that subsections (B) and (C) do not apply because the automatic stay tolled the running of the redemption period and they intend to cure their default under § 1322(b).

Because § 541(b)(8) was only recently enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") of 2005 (Pub. L. 109-8), the Court's research found no case law construing it, and the parties cited none. Basic principles of statutory construction are discussed in *DeGeorge v. United States District Court for the Central District of California*, 219 F.3d 930 , 936-37 (9th Cir. 2000):

> The purpose of statutory construction is to discern the intent of Congress in enacting a particular statute. The first step in ascertaining congressional intent is to look to the plain language of the statute. To determine the plain meaning of a

> particular statutory provision, and thus congressional intent, the court looks to the entire statutory scheme. If the statute uses a term which it does not define, the court gives that term its ordinary meaning. The plain meaning of the statute controls, and courts will look no further, unless its application leads to unreasonable or impracticable results. If the statute is ambiguous--and only then--courts may look to its legislative history for evidence of congressional intent. *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir.1999) (citations omitted). We thus start with the language of the statute itself.

*See also U.S. v. Hanousek*, 176 F.3d 1116, 1120 (9th Cir. 1999). When the language of a statute is plain, the sole function of the courts is to enforce it according to its terms unless the disposition required by the text is absurd. *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (in turn quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917))).

This Court finds no ambiguity in § 541(b)(8), nor any indication that the disposition required by the text of the statute is absurd, and thus its sole function is to enforce § 541(b)(8) according to its terms. The evidence shows that Robert has no obligation to repay Alias Smith & Jones, redeem the collateral, or buy back the property at a stipulated price. Robert certainly had the right to redeem the pawned items, but the plain language of § 541(b)(8)(B) is whether the debtor has an obligation to repay the money, not the right. The terms and conditions of the pawn agreements in Ex. 1 and Ex. A are that Robert pledged the firearms and X-Box Games to secure the total of payments, and that after the agreed period Robert released all equity in the pledged property to sell without notice or demand for payment. No evidence exists in the record that Robert has an obligation to repay, redeem or buy back the pledged property, and substantial uncontroverted documentary evidence and testimony exist that Robert agreed the property could

be sold if he did not redeem.

Turning to subsection 541(b)(8)(C), Debtors' argument that their redemption period was tolled by the automatic stay is contradicted by the plain language of § 541(b)(8)(C) which specifically invokes § 108(b) for determining whether a debtor or trustee has exercised any right to redeem in a timely manner. The uncontroverted evidence shows that the Debtors have not redeemed Robert's firearms and X-Box Games, now more than four months after the petition date, and that failure and Robert's failure to make payments prompted Alias Smith & Jones' motion to modify stay. Section 108(b) provides:

> Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, *cure a default*, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of –
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 60 days after the order for relief.

*In re Schmitt*, 20 Mont. B.R. 57, 66-67 (Bankr. D. Mont. 2002) (emphasis in original).

In *Schmitt* this Court adopted the majority rule that the 60 day extension of § 108(b) is to be applied rather than § 362(a) when dealing with nonexecutory contracts. 20 Mont. B.R. at 69, quoting *In re Circle K Corp.*, 190 B.R. 370, 378 n.9 (9th Cir. BAP 1996), *aff'd.*, 127 F.3d 904 (9th Cir. 1997), *cert. denied*, 522 U.S. 1148, 118 S.Ct. 1166, 140 L.Ed.2d 176 (1998). Debtors contend that the automatic stay of § 362(a) tolled the redemption period, but under the majority rule discussed in *Schmitt*, 20 Mont. B.R. at 67-69, it is the 60 day extension of § 108(b) which is to be applied rather than § 362(a) to the redemption period. That 60 day period expired in early

March of 2007, and therefore Debtors' argument that the redemption period is tolled by the stay is not persuasive.

Debtors have never raised the issue of whether the pawn agreements with Alias Smith & Jones are executory contracts, and more than four months have elapsed since the filing of the petition by the Debtors, during which they, like the debtors in *Schmitt*, did not move for assumption of the pawn agreements as executory contracts under 11 U.S.C. § 365, other than a brief reference in their plan, and did not move for extension of time. *See Schmitt*, 20 Mont. B.R. at 71. Thus, as this Court decided in *Schmitt,* curing a default by extension of the contractual period is governed by § 108(a), as specifically provided in § 541(b)(8)(C), not by § 362(a). *Schmitt*, 20 Mont. B.R. at 71-72, 73. Whether or not the pawn agreements are executory contracts, and whether Debtors may cure their default in the course of confirmation, is simply not ripe. *See Schmitt*, 20 Mont. B.R. at 72 & n.7.

Applying the above to § 541(b)(8)(C) and the uncontroverted evidence, the Court concludes that neither the Debtors nor the Trustee have exercised any right to redeem provided under the contracts or State law, in a timely manner as provided under State law and § 108(b). Since Debtors concede subsection 541(b)(8)(A), and the evidence shows that the Debtors have no obligation to redeem, repay or buy back the pledged property under subsection 541(b)(8)(B), the Court concludes that the pledged firearms and X-Box Games are not property of the estate under § 541(b)(8).

A leading commentator notes that § 541(b)(8), added by the 2005 amendments, is broadly drafted and does not use the word "pawn", but "[n]onetheless it may be fairly said that its obvious, fundamental purpose is to declare that certain tangible personal property pledged to pawnbrokers is excluded from property of the estate. 5 Alan N. Resnick & Henry J. Sommer,

COLLIER ON BANKRUPTCY ("COLLIER"), ¶ 541.22D (15th ed. 2005).

      COLLIER acknowledges that the law still does not permit the secured creditor to dispose of the collateral without relief from the stay. *Id.* Alias Smith & Jones recognized this, and moved for relief from the stay. COLLIER predicted that if property held by the secured party is not property of the estate, then "it would appear to produce the result that the supposed secured party cannot have an allowed secured claim under section 506". *Id.* The terms and conditions of the pawn agreements shown by Ex. A and 1 appear to go even further, concluding that the issuer of the agreement "shall be limited to the aforesaid pledged property in its rights to recover, except for fraud." Since the pledged firearms and X-Box Games are excluded from property of the estate by § 541(b)(8), and the Trustee has consented to Alias Smith & Jones' motion, Alias Smith & Jones cannot have an allowed secured claim as defined at § 506(a) as the estate is left with no interest in such property to secure Alias Smith & Jones' debt. Debtors will have to amend their Plan to remove any treatment of Alias Smith & Jones as a creditor with an allowed secured claim.

      As this contested matter does not involve the confirmation of Debtor's plan, the Court does not consider or make comment concerning cure under 11 U.S.C. § 1322(b)(3). *See* COLLIER, ¶ 1322.07[2].

      Granting relief from the automatic stay returns the parties to the legal position which they enjoyed prior to the imposition of the stay. *In re Johnson*, 17 Mont. B.R. 318, 319 (Bankr. D. Mont. 1999); *Estate of B.J. McAdams v. Ralston Purina Co.*, 154 B.R. 809, 812 (N.D. Ga. 1993). With the Trustee's consent and the pledged property being excluded from property of the estate under § 541(b)(8), the Court will grant Alias Smith & Jones' motion and modify the stay for cause under 11 U.S.C. § 362(d)(1).

## CONCLUSIONS OF LAW

1. This Court has original and exclusive jurisdiction of this case and contested matter under 28 U.S.C. 1334(a).

2. Alias Smith & Jones's motion to modify stay is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

3. Pursuant to 11 U.S.C. § 541(b)(8), the Debtors' 14 firearms and X-Box Games and controllers are personal property pledged as collateral for a loan given by Alias Smith & Jones, are in the possession of the pledgee, the Debtors have no obligation to repay the money, redeem the collateral or buy back the property at a stipulated price, and neither the Debtors nor the Trustee have exercised any right to redeem provided under the contract, State law or 11 U.S.C. § 108(b) in a timely manner, and therefore the Debtors' 14 firearms and X-Box Games are not property of the estate under § 541(b)(8).

4. Alias Smith & Jones showed sufficient "cause" under 11 U.S.C. § 362(d)(1) for the Court to exercise its discretion to grant relief from the stay based upon the Debtors' failure to make payments under the pawn agreements after the petition date.

5. Debtors failed to satisfy their burden under 11 U.S.C. § 362(g)(2) to show why the stay should not be modified.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above overruling the Debtors' objections (Docket Nos. 23 & 29), granting Alias Smith & Jones' motion to modify stay filed on April 4, 2007 (Docket No. 18) and modifying the stay to authorize Alias Smith & Jones to exercise its nonbankruptcy remedies with respect to the pledged property collateral in its possession consisting of 14 firearms described above and an X-Box Games and controllers; and granting the Debtors ten (10) days to file an amended Plan, and resetting the

hearing on confirmation at Great Falls on June 14, 2007.

                                  BY THE COURT

                                  */s/ Ralph B. Kirscher*
                                HON. RALPH B. KIRSCHER
                                U.S. Bankruptcy Judge
                                United States Bankruptcy Court
                                District of Montana